**SO ORDERED.**

**SIGNED this 3 day of June, 2016.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| IN RE: | CASE NO. |
|---|---|
| WANDA LEAH SMITH | 14-02611-5-SWH |
| DEBTOR | |

### ORDER REGARDING MOTION TO MODIFY PLAN AND
### DENYING MOTION TO DISMISS

The matters before the court are the motion filed by the chapter 13 debtor, Wanda Leah Smith, to modify her chapter 13 plan, Dkt. 34, and the motion to dismiss filed by the chapter 13 trustee, Dkt. 23. An initial hearing took place on November 18, 2015, in Raleigh, North Carolina. At the conclusion of that hearing, the court requested briefing from the parties. Memoranda were filed by the debtor on January 7, 2016, Dkt. 47, and by the chapter 13 trustee on January 10, 2016, Dkt. 48. The hearing resumed on February 24, 2016, after which the court took the debtor's motion under advisement. The trustee's motion to dismiss was denied from the bench. This order memorializes that ruling and holds open the debtor's motion to modify as explained below.

### BACKGROUND

Wanda Leah Smith filed a petition for relief under chapter 13 of the Bankruptcy Code on May 7, 2014. At the time, Ms. Smith resided at 109 Golden Meadow Court, Durham, North

Carolina,[1] *see* Petition, Dkt. 1, and PennyMac Loan Services held a deed of trust on the residence in the amount of $104,615. Schedule D, Dkt. 9 at 18. Ms. Smith claimed the equity in the property as exempt up to the amount of $30,000. Schedule C-1, Dkt. 9 at 13. Ms. Smith's proposed chapter 13 plan provided for monthly payments in the amount of $1,110 for 60 months, which included a regular mortgage payment of $850 per month pursuant to EDNC LBR 3070-2(b)(1).[2] Dkt. 10. The plan also provided for payments to cure an arrearage to PennyMac in the approximate amount of $2,550, and to satisfy a $5,000 priority tax claim held by the Internal Revenue Service. *Id.* The liquidation test showed that there would be no distribution to unsecured creditors in a chapter 7 case, and the plan showed Ms. Smith's projected disposable income as -$231.13. *Id.* The plan further indicated that Ms. Smith would make direct payments to the creditors secured by her two vehicles. *Id.*

On October 17, 2014, the trustee filed a motion for confirmation of plan, Dkt. 17, which provided for payments in the amount of $1,110 for 1 month and $1,120 for 59 months. The motion further reflected that the "unsecured pool" from which general unsecured creditors would be paid is established by the plan as $0.00. Dkt. 17 at ¶ 6. The plan as described in the motion was confirmed by order dated November 17, 2014. Dkt. 18.

On December 16, 2014, Ms. Smith filed a motion to modify her plan to include her regular payment to Regional Acceptance in the plan, as she had become delinquent on the vehicle loan secured by her 2009 Nissan Altima "and including the claim into the plan payments will be a

---

[1] It is not apparent why Ms. Smith filed her petition in the Eastern District of North Carolina, as she resides in the Middle District of North Carolina, but no party has objected to improper venue.

[2] Local Rule 3070-2, known as the "Conduit Rule," requires chapter 13 debtors to remit all mortgage payments to the chapter 13 trustee for disbursement to the mortgage holder, unless excused by the trustee or by order of the court.

2

helpful way to address the problem." Dkt. 20 at ¶ 2. The modification was allowed by order dated January 13, 2015. Dkt. 21. As a result, her plan payments increased to $1,480.

On July 14, 2015, the trustee filed a motion to dismiss the case, contending that Ms. Smith was $1,360 behind in her plan payments and that the plan was no longer feasible because priority creditors would not be paid in full. Dkt. 23. Ms. Smith filed a response on August 3, 2015, Dkt. 24, and the hearing on the trustee's motion to dismiss was continued a number of times until it was heard along with the debtor's motion to modify as described below. Based on the proffer made by Ms. Smith's counsel at the hearing that the plan would be adjusted as needed to accommodate the priority claim of the IRS, the motion to dismiss was denied from the bench on February 24, 2016.

On September 3, 2015, Ms. Smith filed a motion to sell the property located at 109 Golden Meadow Court. Dkt. 25. The motion indicated that the sale was not expected to generate net proceeds in excess of Ms. Smith's allowed exemption of $30,000. *Id.* A consent order allowing the motion to sell was entered on September 30, 2015, requiring a copy of the HUD-1 closing statement to be delivered to the trustee and any proceeds in excess of the exemption amount to be turned over to the trustee. Dkt. 30. Thereafter, the real property was sold, and funds net of secured claims and closing costs did not exceed Ms. Smith's allowed residential exemption.

As a result of the sale of the property, Ms. Smith filed a motion to modify her plan on October 16, 2015, Dkt. 34. The motion explained that because the PennyMac mortgage was satisfied through the sale, it was no longer necessary or appropriate for the trustee to make disbursements to PennyMac for the conduit mortgage or on its arrearage claim. *Id.* at ¶ 2. Ms. Smith requested a modification as follows:

> The Chapter 13 Trustee will immediately cease and desist from disbursements to Pennymac (Court claim number 8, Trustee claim numbers 3 and 4) and the debtor shall pay $20,475.00 through October 2015 followed by 43 payments of $568.00 commencing in November 2015.

*Id.* at ¶ 3.

After the motion was filed, the trustee requested Ms. Smith to provide amended Schedules I and J or some other evidence of her current income and expenses. That request was refused. Accordingly, on November 6, 2015, the trustee objected to the motion to modify for the following reasons:

(1) The trustee did not believe all net income was committed to the plan and that the modification was not proposed in good faith;
(2) The debtor had not filed or provided amended Schedules I and J or updated income and expense information, thus the trustee was unable to determine whether the proposed modification met the requirements of the Bankruptcy Code;
(3) The proposed modified plan was not feasible in that it failed to pay priority claims in full; and
(4) The proposed modification did not resolve the pending motion to dismiss or provide adequate protection on future payments.

Dkt. 40.

As noted above, the court heard argument on the motion to modify on November 18, 2015 and February 24, 2016, with the parties briefing the issue in the interim. At issue is whether a debtor is always required to provide the trustee with amended Schedules I and J (or other evidence of current income and expenses) in conjunction with a motion to modify a chapter 13 plan post-confirmation.

## DISCUSSION

Section 1329 of the Bankruptcy Code governs modifications of chapter 13 plans after confirmation. It provides, in relevant part:

4

>   (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>       (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>       (2) extend or reduce the time for such payments; [or]
>       (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan . . . .
>
>   * * *
>
>   (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
>       (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

11 U.S.C. § 1329.

Section 1329 does not explicitly state what justifies a modification, but "it is well settled that a substantial change in the debtor's financial condition after confirmation may warrant a change in the level of payments." *In re Arnold*, 869 F.2d 240, 241 (4th Cir. 1989). Further, because the provisions of a confirmed plan bind the debtor and each creditor pursuant to § 1327, the doctrine of *res judicata* precludes modification unless the party "seeking modification demonstrates that the debtor experienced a 'substantial' and 'unanticipated' post-confirmation change in his financial condition." *In re Murphy*, 474 F.3d 143 (4th Cir. 2007) (citing *Arnold*, 869 F.2d at 243).

In *Murphy*, the Fourth Circuit set forth the analysis a bankruptcy court should use in considering a motion to modify. First, the court "must determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition" to "inform the bankruptcy court on the question of whether the doctrine of *res judicata* prevents modification of the confirmed plan." 474 F.3d at 150. If so, "then the bankruptcy court can proceed to inquire

5

whether the proposed modification is limited to the circumstances provided by § 1329(a)." *Id.* If so, "then the bankruptcy court can turn to the question of whether the proposed modification complies with § 1329(b)." *Id.*

In other words, to justify plan modification, the answer to the following three questions must all be "yes," in sequence:

(1) Was there a substantial and unanticipated change in circumstances?

(2) Is the modification proposed for one of the purposes listed in § 1329(a)?

(3) Does the proposed modification comply with § 1329(b)?

Applying that test to the present facts, the trustee and the debtor agree that the sale of Ms. Smith's residence is a substantial and unanticipated change in the debtor's financial circumstances. Further, Ms. Smith asserts, and the court agrees, that at least part of the proposed modification falls within § 1329(a)(3), which permits modification to "alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." The claim of PennyMac was satisfied through the sale of the real property. Because PennyMac is not entitled to further distribution, the modification alters the amount of distribution due to it. Accordingly, the answers to questions (1) and (2) are "yes," except that the proposed modification also seeks to lower the amount of the debtor's monthly payments to the trustee and thus may not be "limited to" the circumstances provided by § 1329(a).

The trustee contends that § 1329(a) does not contemplate a bare change in payment amount, but only a change in payment *on a particular claim or class of claims*. Thus, he maintains, the plan *payment amount* is established at confirmation and cannot be modified unless there is a change in the debtor's ability to make that payment – which would typically also change the

6

amount to be paid on a class of claims as contemplated by § 1329(a)(1) to bring the modification within that subsection. Absent such a showing, the trustee contends, the confirmed plan conclusively establishes the amount the debtor has to pay, because that is the amount the debtor can afford. As a result, he argues, the payment amount may only be modified if the debtor establishes that she can no longer afford that amount. The trustee further contends that even if the debtor does not have to demonstrate that she can no longer afford the payments, the trustee is entitled to review the updated income and expense figures, and that the information is relevant to whether Ms. Smith's modification is proposed in good faith as required by § 1325(a)(3) (which is incorporated into § 1329(b)(1)).

Ms. Smith contends that she does not have to meet the disposable income requirements of § 1325(b) because that section is not incorporated into § 1329(b)(1), and thus the trustee's request for her updated income and expense information is irrelevant to the pending motion. She maintains that she has met her burden of proof in support of the modification and that it should be allowed without further inquiry and, further, that the trustee should not be able to "hold her motion hostage" while he decides whether a different modification – one on which the trustee would bear the burden of proof – is appropriate. While the debtor has met her burden of proof that no further distribution to PennyMac should be made, which is one part of her requested modification, she has not demonstrated that there has been a substantial change in circumstances impacting her ability to make her plan payments. Assuming that she has a substitute expense that needs to be paid directly, rather than through the plan, she could most likely meet that burden (and the trustee would most likely not have objected to the motion to modify). But absent that evidence, it appears that the

7

debtor now has funds in hand that should be paid to her unsecured creditors.[3] In short, while the debtor argued that the court is effectively shifting the burden of proof from the trustee to the debtor, the court disagrees as to the scope of the debtor's burden to support her own motion.

The debtor further maintains that because of the Conduit Rule, the amount of the plan payment is artificially inflated; that is, without the Conduit Rule, the plan payment would have been only $630 ($1,480-$850), and the sale of the property would not have necessitated a modification of the plan at all.[4] The principal flaw with Ms. Smith's position, though, is that the sale itself may have created a substantial change in the debtor's cash flow and could have been a basis for the trustee's inquiry, not just the motion to modify. Consequently, the trustee would be entitled to seek additional information and, if appropriate, a plan modification to adjust the debtor's plan payment (or the distribution to unsecured creditors) upon the sale of the property if the sale created disposable income not already committed to the plan. Indeed, the debtor acknowledges that the trustee is entitled to request updated expense and income figures from a debtor *at any time*

---

[3] Under the facts of this case, the court need not find whether § 1322(a)(1) requires a disposable income analysis or whether the § 1325(b) requirements must be met with every modification, but only that the debtor must demonstrate a change in her disposable income to support a modification of the amount of her payments.

[4] The debtor admittedly seeks to challenge the Conduit Rule through this motion, contending that the Rule creates a repeated need to modify the plan due to changing mortgage payments (resulting, for example, from adjusted escrow payments) and that if a debtor's ability to pay is to be re-examined with every mortgage adjustment, the debtor has been substantively impacted by having to include a debt inside the plan that she would have chosen to pay directly to the creditor absent the mandatory rule. The criticism of the Conduit Rule is misplaced for several reasons. First, as noted above, the trustee's objection here is not prompted so much by the Conduit Rule as by the sale of the property, possibly resulting in a significant change in the debtor's available income due to a reduction in her housing cost that the debtor would be required to report regardless of whether the mortgage was paid through the plan. Second, the debtor herself has acknowledged the benefit of paying secured debts through the plan, as demonstrated by her prior motion to modify seeking to include her car payment in the plan as "a helpful way to address" her postpetition delinquency. Dkt. 20 at ¶ 2. Nationwide, courts are adopting conduit payments as part of their chapter 13 process because of the many benefits to all of the parties, including effective monitoring of debtor payments, policing of mortgage servicers, and proof of the current status of a mortgage at plan completion. *See Perez v. Peake*, 373 B.R. 468 (S.D. Tex. 2007).

8

during a case and to file his own motion to modify if those figures support a modification. And, the debtor has a continuing obligation to notify the trustee of any change in financial status during the life of the case, *see* Order and Notice to Debtor, Dkt. 6 at ¶ 4 ("You must promptly notify your attorney and the trustee of any change of address or change in financial status or employment during the time this case is pending."),[5] which – assuming there is not an equivalent substitute housing expense – would have required the debtor to update her information after the sale of the property regardless of whether her plan included the mortgage payment.

In their arguments, the trustee and the debtor rely on the binding nature of a confirmed plan, but they take differing positions on what provision of the plan is *res judicata*: the payment amount or the dividend to unsecured creditors. To some extent the answer to that question is wrapped up in the *Arnold* decision, which provides that *res judicata* does not apply if there has been a substantial and unanticipated change in circumstances. But the question is still a good one for purposes of analyzing whether the debtor's ability to continue making payments at the same amount may be considered in conjunction with her proposed modification. If the trustee is correct that the amount of the payment is *res judicata* unless the debtor shows that she can no longer afford

---

[5] The court's form Order and Notice to Debtor has been modified to read as follows: Financial/Address Changes:
> (4) Throughout your case, you must notify your attorney and the trustee of changes in your or your household's financial circumstances, and you must amend your bankruptcy Schedules to show those changes. Examples of changes that would require you to give notice and amend your Schedules include, but are not limited to, when you or a member of your household: (a) gets a raise or changes jobs and your income changes, (b) becomes entitled to inherit real or personal property, (c) moves and your housing or utility costs change, or (d) become entitled to combined tax refunds of $1,000 or more during any tax year. In addition to financial changes, you must also promptly notify your attorney and trustee of any change of address.

The new form does not increase the reporting obligation (except to require the filing of amended Schedules), but instead highlights examples of the changes in financial circumstances that debtors have always been required to report.

the payment, here, $1,480, then her amended Schedules I and J are relevant to the debtor's own motion to modify because she seeks a reduction in payments. If the debtor is correct that the amount of the dividend to unsecured creditors is binding throughout a case, then her current income and expenses are not and never will be relevant because she does not and will not propose to modify the zero percent dividend.

In support of the debtor's position that it is the dividend to unsecured creditors that is established at confirmation and cannot be modified, counsel maintains that his goal as a debtor's attorney is to make the payment – and the dividend – as low as possible and, once he prevails at confirmation with a zero percent plan, he should not have to re-litigate that battle. Thus, as long as the modification is "dividend neutral," that is, does not seek to lower the distribution to unsecured creditors, the debtor argues that the modification should be allowed without further inquiry.

Contrary to the debtor's position, however, the goal of chapter 13 is *not* for the debtor to pay the least amount the debtor can get away with, but instead to pay the greatest amount the debtor can afford. As the Fourth Circuit observed, a chapter 13 debtor receives a number of benefits, including retaining encumbered assets and having defaults cured, while secured creditors have long-term payment plans imposed upon them and unsecured creditors may receive payment on only a fraction of their claims.

> In exchange for those benefits, a Chapter 13 debtor makes a multi-year commitment to repay obligations under a court-confirmed plan. *Id.* The repayment plan remains subject to modification for reasons including a debtor's decreased ability to pay according to plan, as well as the debtor's increased ability to pay. *See* 11 U.S.C. § 1329. As we have stated before, "[w]hen a [Chapter 13] debtor's financial fortunes improve, the creditors should share some of the wealth." *In re Arnold,* 869 F.2d 240, 243 (4th Cir. 1989).

*Carroll v. Logan*, 735 F.3d 147, 151 (4th Cir. 2013).

Further, suggesting that the dividend is fixed at confirmation is contradicted by *Arnold*, 869 F.2d 240, and *Murphy*, 474 F.3d 143, which both determined that an increase in funds available to the debtor in the form of a substantial increase in commission income (in *Arnold*) or a sale of property generating greater proceeds than anticipated (in *Murphy*) mandated a plan modification and a higher dividend to unsecured creditors.[6]

In addition, the debtor's original proposed plan and the trustee's motion to confirm the plan contain language suggesting that the dividend to unsecured creditors may change. Specifically, the proposed plan provides

> **11. GENERAL UNSECURED CLAIMS**
> General unsecured claims shall be paid through the plan pro rata to the extent that funds are available after disbursements are made to pay secured claims, arrearage claims, priority claims, and other specially classified claims.

Dkt 10 at ¶ 11. The motion provides

> Since various factors, including but not limited to periodic fluctuation of the Trustee's commission during the course of this case, may affect the amount of funds in the Unsecured Pool available for distribution to unsecured creditors, the Unsecured Pool shall be increased by the "base" amount not needed to satisfy allowed secured, priority, and administrative claims (including the Trustee's commission).

Dkt. 17 at ¶ 8. Indeed, according to the trustee, if the debtor were to continue her payments at the same monthly payment amount, the dividend to unsecured creditors would change from zero percent to 100 percent.

---

[6] The difference in this case and *Murphy* is that in *Murphy*, the trustee sought to recover the excess proceeds from the sale for the benefit of the unsecured creditors, while here the trustee is trying to determine whether the sale created additional cash flow to the debtor (by virtue of decreased expenses) that should be paid into the plan for the benefit of unsecured creditors. There is no dispute that the sale proceeds are exempt and are not required to be paid into the plan.

11

There is no doubt that the sale of the real property, in a vacuum, resulted in reduction in the debtor's housing expense. Unless that expense was replaced by another expense, a fact unknown to the trustee and to the court due to the refusal to provide updated income and expense information, *Murphy*, *Carroll*, and *Arnold* all demonstrate that any resulting increase in disposable income should benefit unsecured creditors. This is true regardless of the Conduit Rule. The question posed by the debtor, though, is whether the court may examine that circumstance on the debtor's motion, or whether the trustee must file his own motion to modify to increase the dividend to unsecured creditors. And, debtor's counsel would have the court go a step farther and bar the trustee from inquiry or plan modification even though the voluntary act of the debtor (selling her house) may have resulted in excess cash flow.

In other words, Ms. Smith and her counsel want a blanket determination that disposable income is irrelevant to a motion to modify that is "dividend neutral," and that as a result a debtor is not required to provide updated income and expense information to the trustee in conjunction with motions to modify.[7] The trustee wants the court to find that the debtor must demonstrate that she can no longer afford the payment required by the confirmed plan, and otherwise cannot meet her burden of proof that the payment should be reduced.

On this point, the court agrees with the trustee. Under the facts of this case, if the debtor does not have a substitute housing expense such that she can afford to continue making the same plan payment, there would be no basis upon which the trustee *could* seek modification. The distribution to unsecured creditors is already governed by the amount of funds collected by the

---

[7] Although the issue is not before the court, the debtor may be correct that disposable income is not relevant where the motion to modify is necessitated only by a change in the amount of the conduit mortgage payment due to an interest rate or escrow adjustment.

12

trustee available after "disbursements are made to pay secured claims, arrearage claims, priority claims, and other specially classified claims," Dkt 10 at ¶ 11, and no modification would be required to increase that distribution. The trustee would not seek modification to keep the payments the same. On the other hand, if the debtor does have a substitute housing expense that is to be paid outside the plan, it is likely to be the debtor's proposed modification to *lower* her payments. The trustee acknowledged that he would withdraw his objection if he is satisfied that the sale of the residence did not create new funds in the hands of the debtor by virtue of decreased expenses, and the modification would thus be allowed. Of course, if the reality is somewhere in the middle, either party could seek an appropriate modification to adjust the plan payments accordingly.

In this case, the facts are unknown so the court cannot determine whether the trustee could file his own motion to modify. However, by refusing to provide the requested information to the trustee, Ms. Smith has obstructed the trustee's ability to assess the facts and file his own motion to modify the plan (on which the trustee would have the burden of proof). Further, if the court were to allow the debtor's motion to modify now, any subsequent motion by the trustee could be barred by *res judicata*, as there would be no substantial unanticipated change in the debtor's financial circumstances *after* the modified plan became the confirmed plan – that is, the residence is not going to be sold again. The court cannot allow that type of gamesmanship. Until the trustee can review the debtor's updated information and determine whether to file his own motion to modify, the court cannot find that the debtor has acted in good faith in proposing her modification, nor can the court determine at this point whether the debtor has met her burden of proof with respect to lowering her plan payments. While the debtor may complain about further delay, she created the

13

situation by refusing to provide information to the trustee that she has acknowledged he is entitled to request at any time.

## CONCLUSION

Based on the foregoing, the trustee's motion to dismiss is DENIED. The debtor's motion to modify is ALLOWED IN PART, and the trustee is directed to cease all payments to PennyMac. The balance of the debtor's motion to modify will be HELD OPEN for a period of 30 days. The debtor is directed to provide updated income and expense information to the trustee within 14 days of the date of this order. Upon review of that information, the trustee may, within 14 days of receipt of the updated information: (1) withdraw his objection to the debtor's motion to modify, in which case the modification will be allowed; (2) file an amended objection if the updated information does not support any modification in payment amount; or (3) file his own motion to modify if the updated information supports a modification other than the one proposed by the debtor. The court will set a new hearing on the debtor's motion, and the trustee's motion, if any, if the trustee does not withdraw his objection.

**END OF DOCUMENT**